1. BANKS AND BANKING ☞139—PROPERTY OF ESTATE—PROCEEDS OF CHECK.
    Where testator drew his check for $20,000 to the order of his daughter and delivered it to her three days before his death, and she delivered it to her bank, which, through its correspondent, collected it from the trust company on which it was drawn, and paid the proceeds to her two days after decedent's death, she must restore the amount thereof to the estate.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ☞139.]

2. BANKS AND BANKING ☞139—DEATH OF DEPOSITOR—REVOCATION OF CHECK.
    On delivery of such check, the daughter became testator's agent to withdraw the amount called for by same, and her authority as such agent was revoked by his death.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ☞139.]

Judicial settlement of the account of Florence B. Mead and others, as executors of William E. Adamson, also known as William E. Ward, deceased, in which William E. Hallock and another filed objections. Objections sustained in part.

Ferriss & Storck, of New York City, Ottaway & Munson, of Westfield, and G. A. McLaughlin, of New York City, for accounting executors.

Callahan & Hagarty, of Brooklyn, for objectant William E. Hallock.

Robert E. Samuels, of New York City, for objectant George Reeve Hallock.

KETCHAM, S.   [1] The decedent, having an ordinary deposit account in a trust company, drew his check thereon to the order of his daughter for $20,000 and three days before his death delivered the same to her.   She delivered it to her own bank, which, through its correspondent bank, collected it from the trust company on which it was drawn; but it was not paid until two days after the decedent's

death, and the amount then paid reached the hands of the payee. The daughter is one of the executors, who claims in the present accounting that by the delivery of the check to her and its payment "she became the absolute owner of the fund individually."

This contention is answered by an opportune and convincing authority (Matter of Stacey, 89 Misc. Rep. 88, 152 N. Y. Supp. 717), in which, reported since this case was tried, it is held, as to checks which were collected by the payee after the death of the maker:

That "her authority to draw the money was revoked by the death of the testator [maker]"; that "she therefore had no authority to draw the money after the death of the testator"; that "it [the money] constituted a part of the testator's estate, and the fact that the banks paid it to [the payee] did no confer upon her any right to its possession."

[2] The accountants urged that the learned surrogate from whom the foregoing quotation is taken errs in his statement that the payee's "authority was revoked by the death" of the maker; but their argument is wholly based upon their own erroneous assumption that by the making of a check no agency or authority is lodged in the payee. On the contrary, the effect of every normal check is as if in the instrument itself were the words:

"I hereby give to the payee the power and authority in my behalf, and as my agent, to withdraw the sum herein mentioned."

That is the agency to which primarily the rule of revocation is directed. Like all other agencies, not coupled with an assignment or interest, it is revoked by the principal's death. It must be conceded that the rule also involves the theory that the bank on which the check is drawn is an agent of the maker authorized to pay the amount and that the bank's agency is also subject to revocation. But it still remains impossible to accept the accountant's personal dogma that the bank is the "only agent in the case of a check."

The executors suggest a radical difference between the two cases, since in the case cited all the checks were collected by the payee herself, and in the case at bar the check was collected by the intermediate banks, which were the indorsees and agents of the payee. The collecting banks collected, not for themselves, but for the payee, and only under her power and direction. Their act was hers, and their possession of the proceeds of the check was hers. The only effect of the transaction was that the money was paid to her, and the analogy of the Stacey Case appears. The general learning upon the subject herein discussed is well set forth in the opinion of the late William Allaire Shortt, referee, in Bainbridge v. Hoes, 163 App. Div. 870, 149 N. Y. Supp. 20.

This case has nothing to do with the rule by which a bank is afforded safety, where it has paid a check without knowledge of the death of the maker. The condition which alone provoked that rule is not found in this transaction. All the banks are safe. All the executors should be charged in the sum of $20,000, with proper interest thereon. Those who are associated in office with the daughter have affirmed her right to withhold this sum. If the daughter makes restitution, the question of liability will no longer concern her fellow execu-

tors. If she cannot restore, it will be the result of their supine approval of her conversion of a part of the estate.

As to the payment to Catherine Wenz, the account is approved. There was some evidence tending to show that the payment was for services rendered to the decedent, and the objectants failed to sustain the burden of showing the contrary.

The decree should conform to the rulings made upon the trial and the views expressed in this opinion.

Decreed accordingly.