In the Matter of the Accounting of R. GARFIELD SNYDER, as Executor of ANNE M. GOEBEL, Deceased.

CHARLES H. WATTS, as Executor of R. GARFIELD SNYDER, Deceased, Appellant; EMMA ZIEGLER et al., Respondents.

Argued November 26, 1945; decided January 17, 1946.

*Norman Winer* for appellant. I. The surcharge cannot be supported since the drawee bank properly charged $5,000 to the account of decedent in the bank, and the drawee paid the check as drawn. The drawee is a single corporation licensed to do a banking business. Its several branches own no property; no branch, as such, is responsible for debts and no branch can be sued. (Banking Law, § 14, subd. [g]; §§ 29, 105.) II. The fact that "Fordham" had been written on decedent's check, dated June 27, 1939, in no wise impinged upon the validity of the payment. (*Troy City Bank* v. *Lauman*, 19 N. Y. 477; *Levy* v. *Arons*, 81 Misc. 165; *Booth* v. *Powers*, 56 N. Y. 22; *Osborn* v. *Hall*, 160 Ind. 153; *Steele* v. *Lord*, 70 N. Y. 280; *Griffith* v. *Reed*, 21 Wend. 502; *Suydam* v. *Westfall*, 2 Denio 205.) III. Even if a check is presented for collection, if the bank is willing to pay at one place a check drawn upon an account kept in another, it may do so and thereby be fully discharged. (*Irwin* v. *Bank*, 38 Upper Canada, Q. B. Reports 374.) IV. The check was paid at the clearing house on June 28th. The bookkeeping debits and credits were corrected on July 7th. To say that payment was not effected until "Lexington's" bookkeeping entry on July 10th is sophistry. The bookkeeping entry is not the payment but merely the evidence of payment. (*Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Sokoloff* v. *National City Bank*, 250 N. Y. 69.) V. The surcharge cannot be supported because it was not a proper remedy.

(*O'Conner* v. *Gifford*, 117 N. Y. 275; *Matter of Fantl*, 249 App Div. 392; *Gongaware's Estate*, 265 Pa. 512; *Anderson* v. *Piercy*, 20 W. Va. 282.) VI. The other check for $5,000, dated July 7, 1939, was given to claimant by decedent to pay for services previously rendered, for which services decedent assumed an obligation to pay. (*Stimson* v. *Vroman*, 99 N. Y. 74; *May* v. *Curley*, 113 N. Y. 575; *Leask* v. *Hoagland*, 205 N. Y. 171; *Hull* v. *Littauer*, 162 N. Y. 569; *Matter of Gallagher*, 153 N. Y. 364; *Blanshan* v. *Russell*, 32 App. Div. 103, 161 N. Y. 629; *Root* v. *Strang*, 77 Hun 14; *Yarwood* v. *Trusts & Guarantee Co., Ltd.*, 94 App. Div. 47, 182 N. Y. 527; *Matter of Bradbury*, 105 App. Div. 250; *Matter of Whiteman*, 268 App. Div. 591.)

*William H. Hayes* and *James J. Beha* for respondents. I. Decedent's check of June 27, 1939, was a gift and therefore revocable at any time before the $5,000 was paid over or transferred from the decedent's account to that of the claimant payee by the drawee bank. (*Matter of Ryan*, 291 N. Y. 376; *Matter of Mead*, 90 Misc. 263, 173 App. Div. 982, 221 N. Y. 645; *Provident Institution for Savings* v. *Sisters of St. Francis*, 87 N. J. Eq. 424, 88 N. J. Eq. 342; *Burrows* v. *Burrows*, 240 Mass. 485; *Edwards* v. *Guaranty Trust & Savings Bank*, 47 Cal. App. 86.) II. The decedent's check of June 27, 1939, was not paid until two days after her death. Each branch of the Corn Exchange Bank Trust Company is a separate bank entirely distinct from every other bank for the purposes of the presentment and payment of checks. (Negotiable Instruments Law, § 350; *Chrzanowska* v. *Corn Exchange Bank*, 173 App. Div. 285, 225 N. Y. 728; *Sokoloff* v. *National City Bank*, 250 N. Y. 69; *Clinton Trust Co.* v. *Compania Azucarera Central Mabay S. A.*, 172 Misc. 148, 258 App. Div. 780; *Pan-American Bank & Trust Co.* v. *National City Bank*, 6 F. 2d 762; *Marlboro Trust Co.* v. *Elliott*, 86 F. 2d 315; *In re Harris*, 27 F. Supp. 480.) III. The alteration by the payee's secretary of the decedent's check of June 27, 1939, was a material alteration which rendered the check void, except as against him. (Negotiable Instruments Law, §§ 205, 206; *Golden* v. *Furniture Frame Factories, Inc.*, 235 App. Div. 704; *Berks County Trust Co.* v. *Lyte*, 250 Pa. 543; *Marion Savings Bank* v. *Leahy*, 200 Iowa 220; *Mechanics' American Nat. Bank* v. *Helmbacher*, 199 Mo. App. 173; *Born*

v. *Lafayette Auto Co.,* 196 Ind. 399; *Keller* v. *Rock Island State Bank,* 292 Ill. 553; *Wright* v. *Austin,* 1 S. W. 2d 703 [Tex. Civ. App.].) IV. The alteration of the decedent's check of June 27, 1939, was obvious and no subsequent holder of that check was a holder in due course. (Negotiable Instruments Law, § 91; *New Rochelle Securities Co.* v. *International Thrift Society,* 244 App. Div. 824, 270 N. Y. 52; *Sundail Construction Co.* v. *Liberty Bank,* 277 N. Y. 137; *National Ulster County Bank* v. *Madden,* 114 N. Y. 280; *Elias* v. *Whitney,* 50 Misc. 326.) V. The executor's claim for $5,000 on the decedent's check of July 7, 1939, was properly disallowed. There is sufficient evidence to support the Surrogate's finding that said check was without consideration. (*Matter of Humfreville,* 6 App. Div. 535; *Platt* v. *Hollands,* 85 App. Div. 231; *Matter of Dole,* 168 App. Div. 253; *Collyer* v. *Collyer,* 113 N. Y. 442; *Penfield* v. *Penfield,* 155 App. Div. 177.)

DESMOND, J. Anne Marie Goebel died on July 8, 1939. On June 27th of that year she had delivered to Dr. R. Garfield Snyder her check to his order for $5,000, and again on July 7th had turned over to him another check for the same amount. Dr. Snyder tendered both checks to a bank other than the one on which they were drawn, for deposit in his own account. The check first above described was credited to Dr. Snyder's account. The second $5,000 check, mailed to Dr. Snyder's bank for deposit on the day of Miss Goebel's death, was, because of her death, not honored by her bank. When Dr. Snyder brought this proceeding to settle his accounts as Miss Goebel's executor, the residuary legatees moved for a $5,000 surcharge against him by reason of his having collected that amount for himself on the first check. They objected also, to a claim which he had put in against the estate for $5,000 for medical services, which claim, according to him, was evidenced by the second, or uncollected, $5,000 check. The Surrogate held against Dr. Snyder as to both items. The Appellate Division affirmed unanimously, and we granted leave to appeal. Dr. Snyder thereafter died, and his executor is the appellant in this court.

As to the second above-mentioned check — the one which was not presented for payment until after Miss Goebel's death — the Surrogate found that there was no consideration for the

giving of the instrument (see *Matter of Mead,* 90 Misc. 263, affd. 173 App. Div. 982, affd. 221 N. Y. 645). That finding, affirmed by the Appellate Division, is well supported by the proof. We therefore affirm so much of the decree as disallows Dr. Snyder's $5,000 claim.

The other $5,000 check — the one first above described — was a gift from Miss Goebel to Dr. Snyder. The holdings below are that the check after issuance, became a void instrument because of a " material alteration " made therein and, further, that, because of facts to be narrated herein, it was not a proper charge against the estate because not actually paid until after Miss Goebel's death. On June 23, 1939, four days before the check was issued, Miss Goebel had received payment of an inheritance of some $16,000. Being confined to her home because of the illness from which she died about two weeks later, she asked Dr. Snyder, her friend and professional associate, to start a new bank account for her with the $16,000. For this purpose she prepared and handed him, with the $16,000 check, a letter addressed to the Corn Exchange Bank Trust Company asking it to open a bank account in her name and in that amount. Dr. Snyder delivered the check and the letter to the nearby " Lexington " branch of that bank. A bank employee gave Dr. Snyder a " duplicate deposit slip ", also a checkbook. Four days later, on June 27th, Miss Goebel presented Dr. Snyder with the $5,000 check, made out to his order on one of the check blanks from her new checkbook, which check, in its printed heading, described the " Lexington Branch " of the Corn Exchange Bank Trust Company. Dr. Snyder sent his secretary to that branch to have the check certified but on arrival there the secretary was told that certification was impossible, because, according to the branch bank manager, Miss Goebel's account was at the " *Fordham* " branch of the same bank. The Lexington branch manager suggested to the secretary that she run a line through the word " Lexington " on the heading of the check, substitute therefor the word " Fordham ", then deposit the check in Dr. Snyder's account (at another bank). All this the secretary did, and her markings on the check, so made, have been held below to have constituted a " material alteration ", absolutely voiding the instrument. As it turned out later, the bank itself had made a mistake and, having mislaid the letter originally

presented to it when Dr. Snyder opened the account for Anne
Marie Goebel at its Lexington branch, had credited the original
$16,000 to the account of one *Anna* Marie Goebel at the bank's
Fordham branch. Dr. Snyder's secretary, after changing the
word " Lexington " to " Fordham ", at the bank's own sugges-
tion, put it into Dr. Snyder's bank for deposit, whereupon it
passed through the Clearing House, and was, on June 28th,
debited against the Fordham branch account into which the
bank had, by mistake, put Miss Goebel's $16,000 deposit.

All the above came to light on Friday, July 7, 1939, the day
before Miss Goebel's death. The bank discovered its error, or
series of errors, and began to reverse the processes, so as to
make the matter right. On that day the Fordham branch
debited *Anna* M. Goebel's ledger account there in the amount
of $16,000 and credited that account $5,000 (for the check).
On the same day the Lexington branch did what it had been
instructed on June 23d to do — it opened a $16,000 account
in the name of Anne Marie Goebel. Because of its own rules
or customs, it did not, however, debit that newly opened
" Lexington Branch " account with the amount of the $5,000
check until it had actually received that instrument back from
its Fordham branch. The check did not arrive at the Lexington
branch until July 10th, two days after Miss Goebel's death.
Because of that fact, the holdings below are that the check was
not " paid " until after her death, and that at the time of her
death the transaction between Miss Goebel and Dr. Snyder was
a mere uncompleted gift. To this we cannot agree. On the
day before the death, the confusion had been all cleared away
and the bank had put into motion all the procedures necessary
to straighten out the books. Nothing done afterwards by the
bank was any more than a detailed carrying out of the bank's
procedures for correcting its records (see *Sokoloff* v. *National
City Bank*, 250 N. Y. 69, 76, 77; *Baldwin's Bank* v. *Smith*, 215
N. Y. 76, 84). Actually the $5,000 check of June 27th had been
" paid " long before the blunder was discovered, since that
check, in due course, had been charged by the Corn Exchange
Bank Trust Company itself against the very account into which
it had put the $16,000 deposit. The check was issued as an order
or draft against that $16,000 owing by the bank to Miss Goebel.
When that draft was honored and an appropriate $5,000 debit
made against the $16,000 credit, and a corresponding $5,000

credit (never revoked) made to Dr. Snyder's own bank of deposit, the check was in fact and in law " paid ", and we so hold.

As to the character and effect of the " alteration " also, we find ourselves in disagreement with the holdings below. We do not think that the substitution of the word " Fordham " for the word " Lexington " was in any way material. An alteration it was, but the instrument as so altered expressed and effectuated the exact and unquestioned intent of the maker. The purpose of Miss Goebel was to draw a draft on the Corn Exchange Bank Trust Company, her debtor, in favor of Dr. Snyder, for $5,000, to be subtracted from the credit standing in her favor with that bank. The Corn Exchange Bank Trust Company is a single corporation, and was the sole debtor, no matter how many branches it maintained. Section 350 of the Negotiable Instruments Law, making branches separate banks for certain purposes of collection *inter sese* of deposited items, has no bearing on this case. Nor was this a " material alteration " within the language or purpose of sections 205 and 206 of the Negotiable Instruments Law. The change in the check was " to make it express the real bargain of the parties " (LEHMAN, J., in *Levy* v. *Arons,* 81 Misc. 165, 166, quoting from *Booth* v. *Powers,* 56 N. Y. 22, 31).

The orders should be reversed, with costs to all parties appearing separately and filing briefs, and the matter remitted to the Surrogate's Court for further proceedings not inconsistent herewith.

LOUGHRAN, Ch. J., LEWIS, CONWAY, THACHER, DYE and MEDALIE, JJ., concur.

Orders reversed, etc.