SWIFT AND COMPANY, Appellant, *v.* BANKERS TRUST COMPANY, Appellant and Respondent, and I-C BANK AND TRUST COMPANY et al., Impleaded Defendants, Respondents.

136

Argued January 3, 1939; decided February 28, 1939.

*Thomas H. Long, Franklin Malone, E. B. Kixmiller* and *Lewis A. Ackley* for plaintiff, appellant. Under the New York law plaintiff is entitled to recover. (*Shipman* v. *Bank of State of New York,* 126 N. Y. 318; *National Surety Co.*

v. *National City Bank,* 184 App. Div. 771; *City of New York* v. *Bronx County Trust Co.,* 261 N. Y. 64; *Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399; *Conner's Car Co.* v. *Manufacturers & Traders Nat. Bank,* 124 Misc. Rep. 584.) The nature, validity, interpretation and effect of the checks are governed by the place of performance, which is New York, the place of payment. (*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367; *Amsinck* v. *Rogers,* 189 N. Y. 252; *Beadall* v. *Moore,* 199. App. Div. 531.)

*Chester Bordeau* for defendant, Bankers Trust Company, respondent and appellant. The transfer of the checks was made in Illinois and the validity thereof must be deter-- mined by its laws. (*United States* v. *Guaranty Trust Co.,* 293 U. S. 340; *Chemical Nat. Bank* v. *Kellogg,* 183 N. Y. 92.) Whether or not the checks were payable to bearer is a question of interpretation of a contract which was made in Illinois, and the interpretation thereof should be made in accordance with the laws of that State. (*Heidelburger* v. *Heidelberger,* 171 App. Div. 106; *Robinson* v. *Stratman,* 141 Misc. Rep. 393; *Union Nat. Bank* v. *Chapman,* 169 N. Y. 538; *Amsinck* v. *Rogers,* 189 N. Y. 252; *Hennenlotter* v. *De Orvananos,* 114 Misc. Rep. 333.) Under the laws of Illinois, the indorsing of the checks did not constitute a forgery, for the reason that each of said checks was payable to bearer and an indorsement thereof by the bearer was operative. (Illinois Rev. Stat. [1931], ch. 98, § 29; *Houghton Mifflin Co.* v. *Continental Illinois Nat. Bank & Trust Co.,* 293 Ill. App. 423.)

*Charles B. McGroddy, Jr.,* for Central Hanover Bank and Trust Company, respondent. A proper construction of section 29 of chapter 98 of the Illinois Revised Statutes (1931) demands the holding that the checks were " bearer paper." (*Houghton Mifflin Co.* v. *Continental Illinois Nat. Bank & Trust Co.,* 293 Ill. App. 423.)

*John A. Garrity* for I-C Bank and Trust Company, respondent. Whether a check is a " bearer " or " order " instrument is determined by the law of the place of con-

tracting. ( *Union Nat. Bank* v. *Chapman*, 169 N. Y. 538; *Chemical Nat. Bank* v. *Kellogg*, 183 N. Y. 92; *Ulin* v. *Walowitz*, 147 Misc. Rep. 724; *United States* v. *Guaranty Trust Co.*, 293 U. S. 340.) Under the laws of Illinois the checks are " bearer " instruments. (*Houghton Mifflin Co.* v. *Continental Illinois Nat. Bank & Trust Co.*, 293 Ill. App. 423.)

LEHMAN, J. The plaintiff, an Illinois corporation, maintains a deposit account in the defendant bank and in other banks in the city of New York. The defendant bank paid three checks drawn upon the plaintiff's deposit account to the order of " John R. Turley." Duly authorized officers of the plaintiff corporation were induced to sign the checks, so drawn, by a clerk in the " Voucher Department " at the plaintiff's Chicago office. It was the duty of this clerk to approve vouchers or requests for checks received from other departments and to send such vouchers or requests, when properly initialed and approved, to the plaintiff's banking department which would then issue checks in accordance with such approved vouchers or requests. By fraud and trickery this clerk altered some used vouchers by inserting the name " John R. Turley " in place of the payee originally named and procured checks issued in accordance with the altered vouchers. He indorsed these checks in the name of the payee " John R. Turley," deposited them in a deposit account, which he controlled, in a bank in Chicago, and collected the proceeds. The plaintiff, claiming that the defendant bank paid the checks upon forged indorsements and wrongfully debited its account with the amounts so paid, has brought this action against the bank.

The facts are undisputed, and both sides moved for summary judgment. The motion of the defendant was granted and the complaint dismissed. The defendant was authorized to disburse moneys standing to the plaintiff's credit only upon the order and direction of the plaintiff. (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318.) The plaintiff's direction to the defendant was to pay the amount of the checks only upon the order of John R.

Turley. The plaintiff was induced to believe that an actual person named John R. Turley was in existence and, acting under that belief, it named him as payee. It had no intention to vest title to the checks in any person other than the payee so named or to authorize any other person to indorse or collect the checks. Intending to name an existing payee, the plaintiff failed in its intention. The defendant bank, believing that it was paying the checks in accordance with the plaintiff's authorization, upon the order or indorsement of the payee named by the plaintiff, has in fact paid the checks upon the order of a person not named as payee. The defendant, challenged by the plaintiff to show its authority to make such payments and to charge the payments against the moneys in plaintiff's deposit account, can justify the charge only if the checks drawn by the plaintiff to a named payee may, contrary to their terms and contrary to the intention of the drawer, be treated as if drawn payable to bearer, because the payee named is a mythical, non-existent person.

This court has said that "the maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person." (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318, 330.) The Negotiable Instruments Law (Cons. Laws, ch. 38) has, in this respect, codified the common law rule: " The instrument is payable to bearer  *  *  *  3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable." (§ 28.) In Illinois where the instrument was executed, the same rule was applied until 1931. (Cf. *U. S. Cold Storage Co.* v. *Central Mfg. Dist. Bank*, 343 Ill. 503.) After that decision was rendered, the Negotiable Instruments Law of Illinois was amended so that it now provides that an instrument is payable to bearer " when it is payable to the order of a fictitious or non-existent or living person not intended to have any interest in it, and such fact was known to the

person making it so payable, *or known to his employee or other agent who supplies the name of such payee.*" (Illinois Revised Statutes [1931], ch. 98, § 29.) The checks executed in Illinois were, under the law of that State, payable to bearer, could be transferred without indorsement, and constitute authorization to a bank to pay the checks to their bearer without indorsement by the non-existent payee named therein. If the rights and obligations of the parties to the instruments are regulated by the law of the State of New York, where the checks were payable, the instruments were not payable to bearer and payment without indorsement of the person named as payee was unauthorized by the drawer. The problem presented upon this appeal is whether the rights and obligations of the drawer and the bank are to be measured by the law of the State where the instruments were drawn or by the law of the State where they were made payable.

This court has said: " Authorities are not needed to show that in general every contract is to be expounded and enforced by the law of the place where it is made   *   *   * But this general rule admits of an exception, as where the parties at the time of making the contract had a view to a different kingdom." (*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y. 367, 376.) Thus where the contract is to be performed in a foreign State or country the parties are deemed to have intended that performance should be rendered in accordance with the law of the country where the contract is to be performed.

Parties to a contract may, subject to limitations not important here, agree that the extent of their obligations are to be measured and the sufficiency of performance determined by the law of either jurisdiction. Where the parties have not in terms provided what law should be applied, the courts have attempted to formulate general rules defining the separate fields governed by the law of the place where a contract is made or by the law of the place where the contract is to be performed. In *Union Bank* v. *Chapman* (169 N. Y. 538, 543) this court stated " some

general principles, which appear to be settled beyond controversy * * * (1) All matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made. (2) All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract, by its terms, is to be performed." More recently we have said that "as a general rule, the validity of a contract is determined by the law of the jurisdiction where made, and if legal there is generally enforcible anywhere." (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, 414.) That law governs, we have also said, "in matters bearing upon the capacity of the parties to contract and upon the execution, the interpretation and the validity thereof." (*United States Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32, 38. Cf. American Law Institute, Restatement of the Law of Conflict of Laws, §§ 332 and 358.)

The formulation of these general principles has not removed uncertainty and doubt in their application. " Interpretation " of a contract and its manner of performance are so intertwined that the courts often determine pragmatically the question whether the law of the place where the contract was made or the law of the place where the contract by its terms is to be performed regulates particular matters which " bearing upon the interpretation " of a contract are at the same time " connected with its performance." Perhaps pragmatic determination may in such cases be indicated by the nature of the problem, and the test whether one rule or the other produces the best practical result may be the safest guide in the search for the intention, actual or assumed, of the parties.

At times, too, there may be doubt and uncertainty as to the place where a contract is to be performed. Especially in connection with negotiable instruments and more specifically in connection with checks or drafts, has such doubt and uncertainty been manifest in decisions of the

courts of this State. The obligation of parties to such instruments, though contractual, is often not expressed in words but rests upon mercantile custom and is now defined by statute. Thus a bill of exchange has been defined by this court as " an order drawn by one person on another to pay a third a certain sum of money, absolutely and at all events." (*Munger* v. *Shannon*, 61 N. Y. 251, 255.) The judicial definition has been amplified and superseded but not changed in effect by the statutory definition in section 210 of the Negotiable Instruments Law. Ordinarily the drawer of the instrument merely signs the order and does not *in terms* promise anything, yet he " engages that on due presentment the instrument will be accepted and paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it." (Negotiable Instruments Law, § 111.) Regardless of where the instrument may have been executed or transferred, the parties undoubtedly intend that an order for payment shall be presented and paid according to its tenor at the place therein specified or at the usual place of business or residence of the drawee. Matters connected with presentment, acceptance and payment are to be regulated by the law of that place. That seems clear. Uncertainty enters when we deal with matters connected with performance by the drawer of his engagement as defined by the statute. His engagement that on due presentment the instrument will be accepted and paid contemplates performance at the place of presentment. His engagement to pay if the instrument is dishonored contemplates performance at his residence or place of business. Is the liability of the drawer in a particular case to be determined, then, by the place where the drawer has engaged that it shall be accepted according to its terms and paid, the place where the drawer must pay it if dishonored, or the place where the instrument was executed?

In *Hibernia Nat. Bank* v. *Lacombe* (*supra*) this court

held that the rights and obligations of the holder of a dishonored check and the drawer of the check are to be determined by the law of the place where the check is by its terms payable. In *Amsinck* v. *Rogers* (189 N. Y. 252, 257) the court limited closely its earlier decision and said that the contract of the drawer of a bill of exchange " is regarded as made at the place where the bill is drawn, and as to its form and nature and the obligation and effect thereof is governed by the law of that place in regard to the payee and any subsequent holder. (Story on Bills of Exchange, §§ 131, 154.) While as to certain details, such as the days of grace, the manner of making the protest and the person ✔ by whom protest shall be made, the law or custom of the place where it is payable will govern, the necessity of making a demand and protest and the circumstances under which the same may be required or dispensed with, are incidents of the original contract which are governed by the law of the place where the bill is drawn rather than of the place where it is payable." The court distinguishes its earlier decision in *Hibernia Nat. Bank* v. *Lacombe* (*supra*), by stating: " The case was disposed of upon the theory that the instrument was a check, which of course was the fact, and the obligations of the drawer of a check, as stated in the opinion, are entirely different from those of the drawer of a bill of exchange. * * * The drawer of a check contracts to pay at the place where the check is payable, instead of, as the drawer of a bill of exchange does, at the place where the instrument is drawn. It is not, therefore, in conflict with our views to hold that the rights of the parties in the case of such a check should be determined by the laws of the place of payment; in other words, the place of performance by the drawer " (p. 263).

The distinction there drawn between checks and bills of exchange is founded upon mercantile custom. The foundation of the distinction has been destroyed by the Negotiable Instruments Law. "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

(§ 321.) The definition of the obligation and liability of the drawer of an instrument contained in section 111 of the statute, quoted above, is general and. applies to a drawer of a check as well as a drawer of another form of instrument. Precedents are without force when based upon differences and distinctions which have been destroyed by later judicial decision or by statute. Under the statute of New York there can be but one rule applicable alike to the obligation of drawers of checks and of drawers of other bills of exchange payable on demand, and the court must now determine what that rule shall be.

State lines are not barriers in mercantile transactions. Instruments drawn in one State and payable in another State are a common incident in business. The need for uniformity and certainty in the law governing the obligations of the parties to such instruments becomes increasingly urgent. Where there is conflict of law in different jurisdictions, the parties to the instrument should know, at least, which law will govern. The rule as formulated in the Restatement of the Law of Conflict of Laws is that " the law of the place of contracting determines whether a mercantile instrument is negotiable, whether it is duly executed and delivered, whether it is valid without consideration, and if not, whether consideration has been given " (§ 336). The restatement has been criticised by distinguished scholars. The rule is not in complete accord with decisions in many jurisdictions. (See article on Bills and Notes, §§ 167, 168 and 169, 8 Corpus Juris, pp. 97 and 98, and cases there cited.) It finds support, however, in *Howenstein* v. *Barnes & Haynes* (5 Dill. 482; Fed. Cases No. 6786, C. C. D. Kan. 1879); *Navajo County Bank* v. *Dolson* (163 Cal. 485), and perhaps in other cases. Our decision in *Amsinck* v. *Rogers* (*supra*, p. 257) is in accord with the rule, at least to the extent that " the rights and obligations of the drawer of a bill of exchange are determined and fixed by the law of the place where he draws it." The courts below have applied the rule here. It was so applied also in *Hennenlotter* v. *De Orvananos* (114 Misc. Rep. 333).

Both upon authority and upon principle we readopt the rule as formulated in *Amsinck* v. *Rogers* and extend it to

checks. Validity of the check depends upon its construction. If construed in accordance with the law of Illinois where it was drawn, the check constituted an order upon a New York bank to pay a specified sum to bearer. So construed, the instrument is valid and the New York bank was authorized to pay it upon presentment. If construed in accordance with the law of New York where it was made payable, it constituted an order to pay to a non-existent person; in other words, it was a check without a payee to whom it could be delivered, who could transfer it or who could demand or receive payment. Such a check is a mere scrap of paper creating neither right nor obligation, for rights and obligations can exist only in relation to persons to whom the obligations are due and who may enjoy the rights. The validity of an instrument is always determined by the law of the place where the instrument was executed. Upon that point, at least, all the authorities are in agreement, nor is there room for doubt that the extent of the drawer's obligation is defined by the instrument and fixed at the time the instrument is executed in accordance with the law of the place where executed. Details of performance by the bank upon which the check is drawn may be determined by the law of the place where performance is to be made. The validity of the check, the scope of the order to pay and the person authorized by the drawer to receive payment are fixed at the inception of the instrument and by the law of the place where the instrument has inception. We decide nothing else at present. Further demarcation of the line between matters relating to interpretation of an instrument and matters relating to performance must be postponed until such problem is directly present.

The judgment should be affirmed, with costs to the Bankers Trust Company against the plaintiff and with costs to the impleaded defendants, I-C Bank & Trust Company and Central Hanover Bank & Trust Company, against the Bankers Trust Company.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment affirmed.