In the Matter of the Accounting of FRANCIS J. MULLIGAN, Public Administrator of the County of New York, as Administrator of the Estate of MARY K. MASON, Deceased.

Surrogate's Court, New York County, December 31, 1948.

*James A. Cox* for administrator, petitioner.

*Helen L. Brotman* for Michael Lopatto, respondent.

*McLanahan, Merritt & Ingraham* for Alice K. Dale, respondent.

*John F. X. McGohey, United States Attorney for United States of America,* respondent.

*Enzo Calabi* and *Morris L. Bower* for Nicholas Lubimov, respondent.

DELEHANTY, S. Objections to the account of the Public Administrator were filed by two persons claiming to be creditors. One objectant asserts that deceased was indebted to him in the amount of $3,000 upon two loans in return for which the deceased delivered her two checks upon a New York bank. The other objectant claims upon a similar basis an indebtedness of $1,000. It is conceded that the transactions from which the alleged indebtedness arose occurred in Italy. The controversy is between the objectants and a distributee. The Public Administrator takes the position that he is a mere stakeholder. Defense to the claims is based on alleged restrictions in Italian law and in the executive orders of the President of the United States which are said to invalidate the transactions with deceased and hence the claims.

A check is a mere order for the payment of money. The authority of the payee as agent of the maker is revoked by the death of the maker prior to the time the check is cashed (*Glennan* v. *Rochester Trust & Safe Deposit Co.* 209 N. Y. 12; *Curry* v. *Powers,* 70 N. Y. 212; *Harris* v. *Clark,* 3 N. Y. 93; *Matter of Mead,* 90 Misc. 263, affd. 173 App. Div. 982, affd. 221 N. Y. 645). Consequently, no claims against the estate can be based on a check itself. However, the claim of which the check is evidence may still be enforcible against the estate (*Matter of Ludlam,* 158 Misc. 283; *Matter of Pierce,* 56 N. Y. S. 2d 778; *Matter of Ehlers,* 132 Misc. 910). The execution and delivery of a check if unexplained raises the presumption that it was given in payment of a debt (*Nay* v. *Curley,* 113 N. Y. 575; *Koehler* v. *Alder,* 78 N. Y. 287). The rule that the validity of a contract is governed by the law of the place where the contract is made is applicable to a check (*Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135).

The checks offered here were made in Italy. The distributee contends that no contract involving dollar transfers between private parties could be made validly in Italy because of certain Italian regulations in force at the date of the checks. No proof of Italian law has been offered. The particular regulations which might affect the transactions are not identified. The distributee relies entirely upon statements made in the affidavits of the objectants stating that under Italian regulations they would have been prevented from advancing any money in dollars. The court is asked to take judicial notice of such Italian law as may be applicable. Under section 344-a of the Civil Practice Act, the court in its discretion may take judicial notice of foreign law but there seems to be no occasion for independent research by the court when the parties themselves do not indicate in any manner the law upon which they rely. The Italian restrictions, if any apply to this transaction, are disregarded because not shown.

The court is also asked to take judicial notice of Executive Orders Nos. 6560 (Code of Fed. Reg., tit. 31, § 127.0 *et seq.*), 8389 and 8785 (Code of Fed. Reg., Cum. Supp., tit. 3, pp. 645, 948). Order 6560 prohibits every transaction in foreign exchange, the transfer of credit between American and foreign banks and the export or withdrawal from the United States of legal tender. There seems to be nothing in this or any executive order which relieves the estate of the deceased from liability upon an obligation of deceased. The purpose of the executive order was accomplished by the refusal of the bank to cash the checks. There

seems to be no basis for saying that the executive order cancels a valid debt or prevents the proving of a claim against the estate of the debtor. The operative area of the executive orders is discussed in *Polish Relief Comm.* v. *Banca Nationala a Rumaniei* (288 N. Y. 332). In that case the court said that the Executive Order No. 8389 was a check upon trading with the enemy and that its prime purpose was to prevent action which might imperil National defense. The court there said that the order did not forbid attachment of the interest of a foreign bank in its deposits here. The Court of Appeals noted the express assent by the Government of the United States to the construction given to the executive order by that court. A license under an executive order does not seem to be a condition precedent to the bringing of suit and does not seem to affect in any respect the debt for which the suit is brought (*Singer* v. *Yokohama Specie Bank,* 293 N. Y. 542; *Bollack* v. *Societe Generale, etc., en France,* 263 App. Div. 601; *Feuchtwanger* v. *Central Hanover Bank,* 288 N. Y. 342; *Leeds* v. *Guaranty Trust Co.,* 297 N. Y. 1019).

There is some indication of a change in the position taken by Government representatives in cases later than the *Polish Relief* case (*supra*), but under the law as it seems to be established by the cited cases this court must hold that the executive orders relied upon do not bar the presentation of the claims. Since the checks are prima facie proof of the amount of the loans the respective claims must be allowed. The objections to the disallowance of the claims are sustained.

Submit, on notice, decree settling the account accordingly.