In the Matter of the Accounting of UNITED STATES TRUST COMPANY OF NEW YORK, as Executor of ALICE S. DE MONTALE, Deceased.

Surrogate's Court, New York County, June 26, 1950.

*Raymond Harper* for executor, petitioner.

*Walter M. Hinkle* for Mazloum & Absi, respondent.

*Guy George Gabrielson* (*Joseph W. Zeller* of counsel), as attorney in fact for Henry Tazartes and another, respondent.

*Eric Nightingale* and *Ephraim S. London* for Anne Hurst, respondent.

*Coudert Brothers* for Ferenc Szekessy and others, respondents.

FRANKENTHALER, S. The decedent was an American citizen who had lived in Paris for a number of years prior to her death on June 3, 1945. In the proceeding for the judicial settlement of the account of her executor, objections have been filed to the rejection of certain claims which arose out of checks drawn by the decedent on a New York bank.

The first set of objections was filed jointly by Henry Tazartes and Leon Moscowitz. It appears without dispute that the decedent drew two checks on the Fifth Avenue Bank of New York, each dated June 4, 1942, and each in the sum of $3,000. It is conceded that the checks were made and delivered in Paris. One check was payable to the order of the claimant Moscowitz and the other was payable to the order of Carlos A. Pena and indorsed by him on June 9, 1942, to the order of the claimant Tazartes.

On June 4, 1942, the decedent also executed an instrument in the French language which has been translated as follows:

" I certify that the check dated June 4, 1942, in the name of Leon Moscovitz for three thousand Dollars and that dated June 4, 1942, in the name of Carlos A. Pena for three thousand Dollars shall be paid by the Fifth Avenue Bank, 530 Fifth Avenue, New York, U.S.A., after the unblocking of the American funds in the United States, that is after the war.

" In the event of any impediment I undertake to pay myself these two checks, mentioned above."

Neither of the two checks was presented for payment during the lifetime of the decedent. The claimant Tazartes communicated with the drawee in August of 1945, and was advised that the check bore such " a stale date " that it would not be honored by the bank. As matter of fact the decedent was then dead. The claimants thereafter presented their claims to the executor, who rejected them. The objections are addressed to the rejection of the claims.

The residuary legatee contests the validity of the claim and the right of the claimants to recover from the estate. She contends that no claim can be based upon either check as an obligation per se because the authority of the payee to collect the check was revoked by the death of the maker. She argues that although a claim may be based upon the underlying debt, the claimants have offered no evidence of a debt due them from the decedent. She asserts that there is no evidence in the record of any provision of French law under which a check is presumed to have been issued for a valuable consideration and

that, in any event, the failure of the payees to make presentment within a reasonable time negatives any presumption of valuable consideration. Finally, the residuary legatee maintains that the transactions here involved are void under French law and under the laws of the United States relating to the blocking of transfers of foreign funds.

The validity of a check and the extent of the drawer's obligations under it are fixed by the law of the place where it is made. (*Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135, 145; Restatement, Conflict of Laws, § 336.) Such matters as presentment, notice of dishonor and demand, are regulated by the law of the place of performance. (*Swift & Co.* v. *Bankers Trust Co., supra,* pp. 140–141.) The instruments issued by the decedent were made in France and were to be performed in New York. The drawer of a check is ordinarily deemed to have made certain representations and warranties to the payee. Under our law he engages that on due presentment the instrument will be paid, and that if it be dishonored and the requisite proceedings duly taken, he will pay the amount to the holder or to any subsequent indorser who may be compelled to pay it. (*Wachtel* v. *Rosen,* 249 N. Y. 386; *Swift & Co.* v. *Bankers Trust Co., supra,* p. 142; Negotiable Instruments Law, § 111.) The drawer may insert in the instrument an express stipulation negativing or limiting his liability to the holder (Negotiable Instruments Law, § 111) or he may agree that the extent of his obligations be measured by the law of another jurisdiction where the instrument was either made or to be performed. (*Swift & Co.* v. *Bankers Trust Co., supra,* p. 140.) There is nothing in the record to show the implied obligations and engagements of the maker of a check in France. However, we are not here concerned with implied terms of the contract because at the time of making and delivery of the checks the decedent undertook to express in writing the terms and extent of her agreement. She engaged that both checks would be paid after funds in America were relieved of wartime restrictions, and that "in the event of any impediment" she would pay them herself. The right of a person who makes and delivers a check in France thus to define and enlarge her obligations to the obligees is not challenged.

The claimants were prevented from giving testimony of personal transactions with the decedent (Civ. Prac. Act, § 347) and hence must rely upon the written instruments executed and delivered by her. The checks are negotiable instruments and under our law, would be deemed prima facie to have been issued

for a valuable consideration. (Negotiable Instruments Law, § 50.) The French law seems to be similar to our own, in effect at least, in that consideration need not be expressly proved. The expert in French law testified: " Because of the presumption which the French Civil Code expresses regarding consideration of promissory notes, I would, having a promissory note before me of that type, disregard the consideration altogether, because I can rely on the presumption of an existing valid and legal consideration." No evidence has been adduced to rebut the presumption of consideration for the promises of the decedent.

The contract of the decedent, based upon a presumed consideration, was that the checks would be paid when wartime restrictions were lifted and if they were not so paid, she would pay them herself. It is that express agreement which claimants now seek to enforce. They have sought payment from the bank in accordance with the terms of the contract. There was no unreasonable delay in presenting the first check. The instrument executed by the decedent reveals an intent that the checks were not required to be presented for payment until after the war. The decedent died in June, 1945, shortly after the cessation of hostilities. The claimant Tazartes communicated with the drawee bank in August, 1945. Under the circumstances the attempt to collect the check was reasonably prompt. Moreover, even in the case of an unreasonable delay, the drawer is discharged only to the extent of loss caused by the delay. The question of due presentment is to be determined by the law of the place of performance. (*Swift & Co.* v. *Bankers Trust Co., supra,* p. 141.) Even if the presentment had not been made within a reasonable time, the drawer is discharged from liability only to the extent of the loss caused by the delay (Negotiable Instruments Law, § 322), and it does not appear that any loss has been caused to the drawer by the delay in making presentment.

The executor and the residuary legatee contend that the transactions between the decedent and the claimants were void under French law and under the laws of the United States. There have been introduced in evidence various wartime decrees of the French Government relating to the transmission of funds. The court's attention is also called to our Federal statutes and the executive orders relating to transfer of funds abroad. The experts produced by the respective parties are in sharp disagreement as to whether the transactions here involved are valid or invalid under French law. The expert called by the

claimants testified that the checks and the contemporaneous agreement were valid under the law of France. There are apparently no decisions of the French courts on a similar state of facts.

An examination of the various French decrees tends to support the opinion of the expert produced by the claimants. These decrees do not appear to invalidate the decedent's promise to pay but appear only to prohibit transfer of funds unless authorized by the Minister of Finance. The decrees are thus similar in their operation to the executive orders in this country. It has been held that the executive orders do not make conditional an obligation to pay money. The obligation remains even though the power to discharge it by payment is suspended or taken away. (*Singer* v. *Yokohama Specie Bank,* 293 N. Y. 542, 550; *Polish Relief Comm.* v. *Banca Nationala a Rumaniei,* 288 N. Y. 332; *Leeds* v. *Guaranty Trust Co.,* 272 App. Div. 909; *Cermak* v. *Bata Akciova Spolecnost,* 80 N. Y. S. 2d 782, 785.) The court is of the view, therefore, that the decrees of the French Government do not invalidate the agreements made by the decedent.

Moreover, the claims are based upon an agreement which indicates the intent of all parties to the transactions that there would be no payment until the funds were unblocked after the war. It was anticipated that wartime restrictions would be lifted in time and that payment then could be freely made by the drawee. Section 347 of the Civil Practice Act prevents proof as to the exact consideration for the checks. There is nothing in the decrees of the French Government that would indicate that the decedent's obligation could not be enforced after the war.

The court accordingly holds that the claimants Tazartes and Moscowitz are entitled to payment and their claims are accordingly allowed.

The second set of objections were filed by Mazloum & Absi, a foreign copartnership. Their claim is based upon five checks issued by the decedent. Each check is dated May 23, 1940 (although the date of issuance is sharply disputed) and each one is payable to Charles Van Antwerpen. The checks aggregate $24,000. Three of the checks are indorsed by the payee to the order of Ed. Rabbath, and indorsed by the latter to the order of a bank in Mexico. The bank credited them to the account of the claimants. The fourth check was first indorsed to Charles Chalhoub, by him indorsed back to Van Antwerpen, and it then followed the same course as the first three checks. The fifth

check after indorsement to another person and back to Van Antwerpen also contained the same indorsement as the others. An agent of the bank testified that the checks were received from claimants for collection and after an unsuccessful effort at collection were returned to the partnership. There is no doubt that insofar as the bank is concerned it claims no interest in the check and does not challenge ownership by the claimant partnership.

The claimants offered the checks in evidence and rested upon the principle that the " execution and delivery of a check if unexplained raises the presumption that it was given in payment of a debt " and that proof of the making and delivery of the checks constitutes prima facie proof of an underlying debt which the checks, if paid, were intended to satisfy. (*Matter of Mason,* 194 Misc. 308, 310; *Matter of Pierce,* 56 N. Y. S. 2d 778.) It is not now necessary to determine whether such a broad presumption is recognized or whether the decisions in the cited cases were based upon the particular facts there involved. Even if the making and delivery of a check gave rise to a presumption that it was delivered in payment of a pre-existing valid debt in precisely the amount of the check, it would logically follow that the presumed debt was due from the maker to the named payee, or, perhaps, to the person for whom the check was actually intended. The five checks upon which the Mazloum & Absi claims are based, were payable to Van Antwerpen. There is basis for the assumption that the real person interested was Charles Chalhoub. Mr. Rabbath, one of the indorsers, was the attorney for Chalhoub in Beirut, Lebanon. While there might ordinarily be some basis for the assumption that transfer of the instruments was intended to effect a like transfer of the underlying obligations, such an assumption cannot be made here because it was stipulated that Wadih Absi, one of the claimants " would, if examined by cross interrogatories pursuant to commission, testify that Mazloum & Absi paid no consideration for the delivery to them of the papers referred to as Exhibit A on his direct examination [that is, the five checks], and further that said papers were delivered to Mazloum & Absi *for the purposes of collection."* (Emphasis added.) The delivery of the checks to claimants for the purposes of collection only, negatives any intent to make them the owners of any pre-existing debt owed by decedent to the payee of the check. The court therefore holds that proof of the execution and delivery of the checks of the decedent is not sufficient prima facie to establish

a valid debt in the amount of $24,000 owed by decedent to Mazloum & Absi.

The case of claimants Mazloum & Absi was not presented or tried on any theory that decedent is liable to claimants on engagements undertaken by her by virtue of the making and delivery of the checks. No proof was offered as to obligations of the maker implied by the law of France, as to performance of their engagements by the holders or their assignors, if any, or as to any indications of intent to measure the extent of decedent's obligations or sufficiency of performance by any other law. On the basis of the record, claimants Mazloum & Absi have failed to establish any valid claim against the decedent. Their objections must, therefore, be dismissed and their claim as presented in the record, disallowed.

During the course of the trial the deposition of Charles Van Antwerpen was offered subject to a motion to strike out all testimony of personal transactions or communications with the decedent. The witness was the payee and indorser of the five checks on which the claim of Mazloum & Absi is based. Section 347 of the Civil Practice Act renders incompetent as a witness to personal transactions or communications with the decedent, a person interested in the event " or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise." The motion to strike out all testimony concerning personal transactions or communications between the witness and the decedent is granted.

The petition presents a question of construction of the will. It is asserted that the question of construction may become academic. If the parties desire a present determination of that question, time for the submission of briefs may be agreed upon, or if not agreed upon will be fixed by the court. If no present determination is necessary, the question may be reserved for the final accounting of the executor and a decree may be submitted, on notice, settling the intermediate account in accordance with the decision herein.