Owen McGivern, J.
This is an action by a Cuban matron, now a refugee living in the United States, to recover the sum of $132,000 in United States currency; this latter sum was to be available to the plaintiff at the Colonial Trust Company in New York, in exchange for an equivalent sum of pesos paid by the plaintiff to the defendant Industrial Bank of Cuba.
*286 The proof on trial revealed that, following a family consultation, it was decided to transmit money to the United States with the intention of investing in real property. The family group consisted of the plaintiff’s mother, the plaintiff, her husband and four children. Testimony was to the effect that a legacy from the plaintiff’s father, deceased, passed from the plaintiff to her husband by virtue of a power of attorney; plaintiff’s mother testified similarly to a like arrangement.
On the eve of the Castro triumph, on December 30, 1958, the plaintiff’s mother was dispatched to the G-uanaboeoa Branch of the Industrial Bank with a check in the sum of 135,000 pesos signed by the plaintiff’s husband and with instructions to acquire in exchange an equivalent amount of United States dollars which were to be made available in the United States. The details of the transaction were handled at the bank by the bank’s administrator, a Mr. Rousseau, known to the plaintiff’s family. Indeed, Mr. Rousseau testified at the trial, and confirmed the plaintiff’s position that the end and aim of the transaction was the delivery of United States dollars in New York. Of significance is that one of the details of the transaction was the giving of an excess sum of American dollars to the plaintiff’s mother at the time. The plaintiff’s mother returned home, bearing with her a draft in the sum of $132,000, American, drawn on the Colonial Trust Company, New York. The draft was dated December 30, 1958, and stated on its face, “ This draft must be presented for payment within three months of date hereof.” This draft was then given to a family friend who was en route to the United States. A few days thereafter the Batista regime disintegrated, the plaintiff’s husband found asylum in the Brazilian embassy, the family was dispersed, but finally reunited in Miami, Florida, about May, 1959. Previously thereto, the plaintiff, upon her arrival in Miami, and on April 10, 1959, through the Pan-American Bank of Miami, presented the draft at the Colonial Trust Company in New York; this was about 10 days after the three-month period stated on the face of the draft. The Colonial Trust Company did not react immediately; and, following instructions from the defendant Industrial, eventually rejected payment.
The defendant has attempted to justify rejection of the plaintiff’s claim on the ground that the Industrial Bank acted validly pursuant to directions of what is called the Currency Stabilization Fund of Cuba and on the further ground that the funds in question originated from certain extra-curricular activities carried on by the plaintiff’s husband while he was the Mayor of G-uanabacoa. The court rejects both contentions. The latter *287 was not proved, and as to the former, the court adopts the testimony of the hank administrator, Mr. Bousseau, that prior approval of the Currency Stabilization Fund was not necessary and that the transaction which he supervised on behalf of the bank complied with the currency control rules obtaining at that time.
The court further finds that the delay in the presentment of the instrument was caused by circumstances beyond the plaintiff’s control and was not imputable to her default, misconduct or negligence. Further still, the court finds that the evidence supports the conclusion that the transaction was for the purchase of $132,000 in United States currency, from Industrial, and for delivery in New York, for which Industrial received and has retained a commission of approximately $3,000, and New York having been designated as the place of performance, the plaintiff has rightfully brought her suit in our courts. “ A cause of action arises when and where the breach occurs, even though the place of contracting be elsewhere.” (Tandoc v. Luckenbach S. S. Co., 5 A D 2d 857.) (See, also, Foster Co. v. Koppel Ind. Car & Equipment Co., 127 Misc. 51; Matter of De Montale, 199 Misc. 711; Negotiable Instruments Law, § 111.)
In Hibernia Nat. Bank v. Lacombe (8á N. Y. 367, 384) the court said: “ The cause of action arises when that is not done which ought to have been done; or that is done which ought not to have been done. But the time when the cause of action arises determines, also, the place where it arises, for when that occurs which is the cause of action the place where it occurs is the place where the cause of action arises. ’ ’
In Riddle v. Bank of Montreal (145 App. Div. 207, 211) involving two foreign corporations, the court held that the New York court had jurisdiction over an action on a draft drawn on a New York branch, saying: “It was drawn on a New York bank. It was not paid when presented. When payment was refused a cause of action arose in the State of New York in favor of the Bank of Montreal against the drawer, the United States Banking Company.”
As for the ex post facto dissolution of Industrial by Law Decree 891 of the present Cuban regime, the court rejects such a ukase as confiscatory in nature, contrary to our public policy and ineffectual to deprive plaintiff of her property (Vladikavkazsky Ry. Co. v. New York Trust Co., 263 N. Y. 369).
No recognition will be given to such expropriation decrees as relative to assets located in New York (Bollack v. Societe Generale, 263 App. Div. 601; Plesch v. Banque Nationale de la Republique d’Haiti, 273 App. Div. 224).
*288 The other defenses raised have not been proven sufficiently to defeat the plaintiff’s action.
Accordingly, the court concludes that plaintiff is entitled to judgment for the sum of $132,000, with interest. The foregoing constitutes the court’s decision in accordance with section 440 of the Civil Practice Act. All motions on which decision was reserved are hereby denied.