Sylvia Hillman and H. Hillman, Trading as Check Agencies #20, Appellants, v. Kropp Forge Company, Appellee.

Kropp Forge Company, Appellee, v. Sylvia Hillman and H. Hillman, Individually and Co-partners, Trading as Check Agencies #20 et al., Appellants.

Gen. No. 44,992.

Opinion filed May 8, 1950. Released for publication May 23, 1950.

WEISSENBACH, HARTMAN, CRAIG & OKIN and LAWRENCE S. ADLER, all of Chicago, for appellants; HARRY OKIN, CECIL E. MAGID and LAWRENCE S. ADLER, all of Chicago, of counsel.

DENT, HAMPTON & DOTEN, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiffs (for convenience hereinafter referred to as the currency exchange) brought suit upon a check issued by defendant (hereinafter referred to as Kropp) for $1,975.55, dated January 3, 1945, payable to Tolabeag Engineers (hereinafter referred to as Tolabeag), upon which defendant stopped payment. Defendant filed a cross-complaint to recover the proceeds of three other checks drawn by Kropp, payable to the same order, and a fourth check to the order of W. S. Nusbaum, the four checks aggregating $6,410, all cashed at the currency exchange and cleared through the Central National Bank of Chicago, which was made defendant to the counterclaim.

A trial without a jury resulted in dismissal of plaintiffs' action and judgment on the counterclaim against the currency exchange and the bank in the sum of $7,818.78, which included interest at 5 per cent per annum from January 10, 1945, from which judgment the counter-defendants appeal.

The hearing was had upon a stipulation of facts together with exhibits and some depositions made a part thereof, which reveal the following material facts out of which this controversy arose. Defendant had in its employ one Thomas J. Lane, who was superintendent of defendant's machine shop from 1940 until

607

1944, when he was promoted to superintendent of maintenance. He had authority to prepare and submit to defendant's purchasing department purchase requisitions for material and parts needed for defendant's business. Defendant's purchasing agent from time to time received suggestions and recommendations from Lane as to suppliers of the materials requisitioned by him. Lane entered into a conspiracy with his wife, also a former employee of defendant, to defraud defendant. The scheme involved the creation of the fictitious name ''Tolabeag Engineers,'' a combination of letters of the names of Lane and his wife. To carry out the object of the conspiracy, the wife went to Cleveland, Ohio, rented office space in the name of Tolabeag Engineers, and opened a bank account in that name in a Cleveland bank. In the established routine of defendant's business, Lane, in the performance of his duties, prepared requisitions, which were submitted to the ''works manager'' and then in turn to the purchasing agent. The name Tolabeag Engineers appearing in such requisitions was furnished by Lane to the works manager, and in other requisitions Lane furnished the name of W. S. Nusbaum, who was a living person but had no knowledge of the use of his name in the requisitions in question. Nusbaum had previously done business with defendant in bona fide transactions involving the sale of supplies to defendant. These requisitions in question, furnished to the purchasing agent by Lane, were signed by Lane on a line intended for his signature, and thereafter the purchasing agent inserted the name Tolabeag Engineers in the several requisitions involved, and W. S. Nusbaum. Purchase orders were then prepared by the purchasing department and approved by the officers in authority, in accordance with the established procedure. These purchase orders bearing the name Tolabeag were mailed to Cleveland at the address furnished by Lane and appearing in the

requisitions. The orders issued to Nusbaum were, at the request of Lane, presented to him by the purchasing agent to be delivered to Nusbaum in person—a little out of the ordinary routine of business but apparently the result of Lane's false pretense to the purchasing agent.

The next step in the established procedure of defendant was to receive invoices for alleged deliveries called for by the purchase orders. Pursuant to the conspiracy, Lane had his wife send invoices from Cleveland in the name of Tolabeag, and Lane caused an invoice in the name of Nusbaum to be forwarded to defendant for the purchase orders in question. By some trick or device, Lane falsely recorded, upon the receiving records of defendant, receipt of the material from Tolabeag and Nusbaum to correspond to the purchase orders, and induced defendant's receiving clerk to approve the receiving record with the false entries made by Lane. In the next successive step of established routine the documents—namely, requisition, purchase order, receiving record and invoice—were transmitted to the proper department, where these records were then checked, and checks were issued to the order of Tolabeag, and either mailed to Cleveland, or, in some instances, handed to Lane on his representation that John Tolabeag was in town and wanted Lane to pick up his check for him. In the instance of Nusbaum, the check was handed to Lane for delivery to Nusbaum.

The four checks in question were all endorsed by Lane in the name of the payee and cashed by Lane, as already indicated. That Lane had a criminal record and was guilty of fraud in the transactions in question is admitted by the stipulation; that Tolabeag Engineers is a fictitious concern, existing in name only and created for the purpose of carrying out the conspiracy, and that Lane forged Nusbaum's name upon the Nus-

baum check is also admitted. Lane had cashed all of his salary and bonus checks, issued by Kropp, at the currency exchange over a period of several years, and had established his identity with the latter and developed their confidence.

The controlling question presented upon this appeal is whether the statute, ch. 98, par. 29, sec. 9, subpar. (3), Ill. Rev. Stat. 1949 [Jones Ill. Stats, Ann. 89.029, subpar.(3)], as amended July 2, 1931, is applicable to the instant facts, which would make the checks in question "bearer" checks. The section reads in part as follows:

"The instrument is payable to bearer: . . .

3. When it is payable to the order of a fictitious or non-existent or living person not intended to have any interest in it, and such fact was known to the person making it so payable, or known to his employee or other agent who supplies the name of such payee."

It is earnestly argued by defendant that the proper construction to be placed upon this statute would require that the "employee or other agent who supplies the name of such payee" should be one who has some authority in the preparation, execution or issuance of the check as distinguished from an employee such as Lane, whose duties were confined to the shop, as already outlined.

The amendment passed by the legislature July 2, 1931, added to the section as it previously existed "or known to his employee or other agent who *supplies* the name of such payee." (Italics ours.) This amendment followed the decision in *United States Cold Storage Co. v. Central Manufacturing District Bank,* 343 Ill. 503, and was intended to overcome the conclusion reached in the case cited. This court substantially said so in *Houghton Mifflin Co. v. Continental Illinois Nat. Bank & Trust Co. of Chicago,* 293 Ill. App. 423, which

610

was decided after the 1931 amendment to the statute, where we reversed a judgment in favor of the drawer of the check against the bank which cashed it, and where the checks were made payable to living persons not intended to have any interest in them, and whose endorsements were forged by an employee of the drawer. We there said:

''The purpose of the amendment is to place the responsibility upon the drawer of an instrument for the acts of his agent who names a fictitious payee without the drawer's knowledge. This is accomplished by treating such instrument as bearer paper transferable by delivery.''

There, too, the contention was raised that even under the amendment it is still the intention of the duly authorized officers which controls, and the dishonesty of the defrauding clerk does not supersede the intention of the company's duly authorized agents. In disposing of this contention, we said:

''There is no language in the statute from which such limitation on its meaning can be inferred.''

New York, which has no corresponding statute as the amendment in question, nevertheless in *Swift & Co. v. Bankers Trust Co.*, 280 N. Y. 135, 19 N. E. (2d) 992, followed the law of Illinois, which was held applicable to the transaction, and concluded that the amendment controlled. It was there, too, observed that the amendment in Illinois was passed after the decision of the *United States Cold Storage Co.* case, *supra*.

The question here presented has been ably argued by both sides, and the numerous cases in this State and elsewhere, cited by them, we have carefully reviewed. We feel the construction of this amendment contended for by defendant is too narrow and would unduly restrict what we regard as the intention of the legislature to protect those who in good faith cash such checks. It

611

is conceded here by defendant that, if these checks can be properly regarded as bearer checks, liability exists.

█ Upon the facts submitted, we conclude that Tolabeag was a fictitious person, and that the name was supplied by Lane, an employee within the meaning of the amendment, since he was an integral part of the required procedure established by defendant, which ultimately led to the issuance of the checks in question. The fact that his duties did not call upon him to prepare, execute or issue the checks in question would not take it out of the amendment.

In *Citizens Loan & Security Co. v. Trust Co. of Georgia,* 79 Ga. App. 184, 53 S. E. (2d) 179, where a corresponding statute like the amendment in our State exists, the agent had no connection with the preparation, execution or issuance of the checks, but transmitted the names of fictitious and nonexistent persons, and checks issued to them as payees.

In *Sun Life Assurance Co. of Canada v. First Nat. Bank of Chicago,* opinion by the District Judge, Case No. 2748, opinion filed 1943, it appears that the dishonest agent transmitted spurious requests for drafts and supplied the names of the payees, although he had nothing to do with the preparation, execution or issuance.

█ As to the Nusbaum check in question, the payee was a living person, not intended to have any interest in it, but the name was supplied by Lane. What we have said with respect to the Tolabeag checks applies with equal force to the Nusbaum check.

It follows that the trial court erred in entering judgment for defendant upon its counterclaim. Accordingly, it is reversed and judgment is here entered for plaintiffs for $1,975.55 with interest at 5 per cent from January 12, 1945, to date, making a total of $2,501.26.

*Reversed and judgment here.*

Tuohy, P. J., and Niemeyer, J., concur.