Orton Crane and Shovel Company, Appellant, v. Federal Reserve Bank of Chicago and Amalgamated Trust and Savings Bank of Chicago, Appellees.

Gen. No. 45,553.

Opinion filed December 19, 1951. Released for publication January 7, 1952.

DANIEL A. COVELLI, of Chicago, for appellant; ROBERT J. COLLINS, of Chicago, of counsel.

DENT, HAMPTON & DOTEN, of Chicago, for appellees.

MR. JUSTICE LEWE delivered the opinion of the court. Plaintiff appeals from a judgment entered in favor of defendants in an action on certain checks issued by plaintiff and bearing endorsement forged by one of plaintiff's employees. Plaintiff appealed directly to the Supreme Court where the cause was transferred to this court on the ground that the record failed to show that any constitutional question was presented in the

trial court. (*Orton Crane & Shovel Co. v. Federal Reserve Bank of Chicago and Amalgamated Trust & Savings Bank of Chicago*, 409 Ill. 285.)

The facts are stipulated. Plaintiff employed one Niblett as a bookkeeper who supervised plaintiff's bookkeeping system. In the conduct of its business plaintiff purchased material and supplies from many persons, payment for which was made in the following manner. Invoices from plaintiff's suppliers were delivered to the president of plaintiff corporation who turned them over to Niblett who entered them in the books of the plaintiff. In the absence of a specific direction from plaintiff's president or treasurer, Niblett determined which of these invoices were to be paid. When a determination was made by Niblett to pay an invoice of a supplier, he prepared a remittance slip stating the name and address of the supplier, the date and amount of the invoice, the discount, if any, and the net amount due. He also prepared a check in the amount shown on the remittance slip, payable to the order of the supplier therein named. Thereafter the remittance slip with the check attached was sent to one of the authorized officers for signature. These officers did not examine any of the books or records before signing checks, to ascertain whether an invoice in the amount of the check had been received by the plaintiff from the payee named therein or whether plaintiff had received the material for which the check was issued. It appears that plaintiff's officers relied solely upon the information contained in the remittance slip prepared by Niblett. After the checks were issued Niblett entered the amount of the check and the name of the payee in the company's books.

This suit is based upon thirty-five checks, aggregating $6,432.18, which plaintiff insists were paid upon the forged endorsements of the respective payees and

wrongfully charged to its account at The Northern Trust Company in Chicago, Illinois.

As to the checks here in question Niblett made false entries in plaintiff's books to show receipt of fictitious invoices from certain of plaintiff's suppliers. Based upon these false entries, he then prepared checks and remittance slips which he presented to plaintiff's officers. After the checks were signed Niblett got possession of them. He destroyed the false remittance slips and thereafter endorsed the checks in the names of the payees. Niblett used names of well-known suppliers and creditors of plaintiff as payees in the checks. None of them was endorsed in Niblett's name, and all of them were cashed for him by one Richardson who operated a restaurant in the building in which plaintiff's offices were located. Most of the checks bore Richardson's endorsement and were deposited by him in his account at the Amalgamated Trust & Savings Bank; others were used by Richardson in payment of his accounts with third persons. The moneys received on the checks were appropriated by Niblett for his own use.

The defendant banks received the checks in the usual course of business for deposit or collection in behalf of regular depositors without knowledge of any infirmity therein, and they endorsed each of the checks with a rubber stamp guaranteeing prior endorsement. The defendant Amalgamated Trust & Savings Bank was notified of Niblett's fraudulent scheme by The Northern Trust Company on March 29, 1946, and the Federal Reserve Bank received a similar notice on October 19, 1946. The Northern Trust Company assigned its right to the checks in question to plaintiff in consideration of a covenant not to sue.

The principal question presented for determination is whether the checks in controversy are ''bearer checks'' within the language of chapter 98, paragraph 29, section 9, subparagraph (3), Illinois Revised Stat-

utes 1949, as amended July 2, 1931 [Jones Ill. Stats. Ann. 89.029] which reads:

"The instrument is payable to bearer . . .

"(3) when it is payable to the order of a fictitious or nonexistent or living person not intended to have any interest in it and such fact was known to the person making it so payable, or known to his employee or other agent who supplies the name of such payee."

Plaintiff contends that the statute is not applicable for the reasons (1) that Niblett did not "supply" the names of the payees in the checks sued on within the meaning of the statute and (2) that the plaintiff was actually indebted to the payees named in the checks.

Under almost identical circumstances the precise question here presented was decided contrary to plaintiff's contentions in the recent case of *Hillman v. Kropp Forge Co.*, 340 Ill. App. 606. An examination of that case discloses that one Lane, superintendent of maintenance of defendant's plant, had authority to prepare and submit to defendant's purchasing department requisitions for material and parts used in defendant's business. Lane entered into a conspiracy with his wife, a former employee of defendant, to defraud defendant. The Lanes created a fictitious company called "Tolabeag Engineers" and established offices in another state where they opened a bank account. Lane prepared requisitions for his fictitious company and also for one W. S. Nusbaum which were later turned over to the purchasing agent of defendant. Nusbaum had previously had transactions involving the sale of supplies to defendant but had no knowledge of the use of his name in the requisitions. The requisitions furnished by Lane were thereafter delivered to the purchasing agent of defendant who inserted the names of the fictitious company and Nusbaum. In accordance with the established procedure of defendant, purchase

287

orders were then prepared by the purchasing department and approved by the officers in authority. These purchase orders were mailed to Lane's fictitious company at the address furnished by Lane. The order issued to Nusbaum was presented to Lane by the purchasing agent to be delivered to Nusbaum in person. Lane had the invoice in the name of Nusbaum forwarded to defendant for the purchase order in question. Thereafter Lane falsely recorded upon the receiving records of defendant receipt of the alleged material from the fictitious company and Nusbaum, to correspond to the purchase orders, and induced defendant's receiving clerk to approve the record with the false entries made by Lane. Later checks were issued payable to the order of Lane's fictitious company and also to Nusbaum. Lane endorsed the checks payable to the order of the Tolabeag Engineers and retained the proceeds thereof. Upon some false pretense the Nusbaum check was given to Lane for delivery to Nusbaum. Instead Lane kept this check and forged Nusbaum's name as payee. After analyzing the decisions construing the statute here involved in its original form and after it was amended and stating the purpose of the amendment, this court concluded that all the checks issued by defendant to Lane's fictitious company and Nusbaum were "bearer" checks. It should be noted that in the case last cited Nusbaum was a bona fide supplier of the Forge Company and a real person, as were all the payees named in the checks involved in the present case.

In our opinion the *Hillman* case is decisive of the issues in the case at bar.

We have considered the other points urged and the authorities cited in support thereof but in the view we take of this case we deem it unnecessary to discuss them.

288

For the reasons given, the judgment is affirmed.

*Judgment affirmed.*

KILEY, P. J. and FEINBERG, J., concur.