The People of the State of Illinois, Appellee, v. Neal V. Dauphin, et al., Appellants.

Gen. No. 64–7.

Second District.

November 5, 1964.

Rehearing denied January 8, 1964.

Berry & Simmons, and Alex J. Victor, of Rockford (James Berry, of counsel), for appellants.

William G. Clark, Attorney General, of Springfield (William B. Petty, State's Attorney, of Mount Carroll, Fred G. Leach, and E. Michael O'Brien, Assistant Attorneys General, of counsel), for appellee.

CARROLL, J.

A grand jury of Carroll County returned indictments against the defendants, Neal V. Dauphin and Ree C. Dauphin, charging them with forging the name of Phillip G. Sipe on a bank check drawn to his order by Commonwealth Loan Company, the uttering of a forged check, and conspiracy to cheat and defraud the said loan company. A change of venue was granted to Jo Daviess County where a jury found both defendants guilty. Neal V. Dauphin was sentenced to the penitentiary for a term of not less than one nor more than three years on the forgery conviction and fined $500 on the conspiracy charge. Ree C. Dauphin was fined a total of $1,500 on the two convictions.

Commonwealth Loan Company (referred to herein as Commonwealth) is a small loan company with offices in Clinton, Iowa and is authorized by Iowa law to make small loans to individuals up to the sum of $500. The evidence offered by the people discloses that on February 18, 1960, the defendant, Neal V. Dauphin, was indebted to Commonwealth on a loan in nearly the sum of $500, the maximum amount which Iowa law permitted to be made to a single individual. On that date he applied for a loan and was informed by C. V. Kearns, manager of Commonwealth, that because of his existing loan he could not borrow any more money. Defendant then suggested to Kearns that a loan be made in the name of his tenants, Phillip G. Sipe and Aiko Sipe. Kearns assented to such arrangement on condition that the Sipes sign the note, chattel mortgage, loan application, and financial state-

ment, and provided further that the Sipes' credit was satisfactory. Kearns then gave Dauphin the necessary papers to complete the loan. When these papers were returned to the loan company, they bore the signatures of the Sipes. The loan was made for $500 and Dauphin was given the money in cash. In May, 1960, the loan was renewed for $500, and Dauphin received the difference between that amount and the unpaid balance on the original note. On August 15, 1960, the loan was again renewed and as on the previous occasions, the papers were taken by Dauphin and when returned, the signatures of the Sipes appeared thereon. On February 24, 1961, Dauphin again came to the loan company and applied for a renewal of the loan up to the limit of $500. He was given a note and chattel mortgage to be signed by the Sipes. These instruments bearing the signatures of the Sipes were later returned to the loan company office, and Dauphin was given a check payable to the order of Phillip G. Sipe for the sum of $143.79, which represented the proceeds of the renewal loan. Dauphin took this check bearing the endorsement of Phillip G. Sipe to the National Bank of Savanna, where he endorsed and deposited the same to his account in that bank. It is with the forging of the signatures of Phillip G. Sipe to this check, and the uttering of the same that the defendants were charged in the indictments in this case. Indictment No. 14720 charged Neal V. Dauphin with uttering a forged check. Indictment No. 14721 against Ree C. Dauphin charged her with forgery. In a third indictment, No. 14723, both of the Dauphins were charged with conspiracy to defraud the loan company by use of the confidence game. When the loan payments became delinquent, Kearns notified the Sipes, who informed him that they had no loan with his company. On June 30, 1961 the Dauphins paid the balance due on the loan in full, and the loan

papers were returned to them. Neither Phillip or Aiko Sipe ever appeared at the loan company office in connection with any of these loan transactions. They both testified without contradiction that they did not sign or authorize the signing of any of the loan papers in question. An examiner of questioned documents testified that in his opinion the signature of Phillip G. Sipe appearing on the indictment check was written by Ree C. Dauphin. The defendants did not testify.

The principal ground upon which defendants urge reversal is that the check which Neal V. Dauphin endorsed and deposited in the Savanna Bank was payable to bearer for the reason that Kearns delivered the check to Dauphin on his credit and not that of the Sipes; that it was the property of Dauphin; and that the endorsing and passing of such a check did not constitute forgery. The indicated basis for such contention is paragraph 3 of Section 9 of the Negotiable Instruments Law (Ill Rev Stats 1961, c 98, § 29) which in part is as follows:

> "The instrument is payable to bearer: . . . When it is payable to the order of a fictitious or non-existent or living person not intended to have any interest in it, and such fact was known to the person making it so payable, or known to his employee or other agent who supplies the name of such payee . . ."

Defendants contend that under the provisions of the foregoing statute the indictment check qualifies as an instrument payable to bearer because Kearns knew at the time he made such check payable to the order of Phillip G. Sipe and delivered it to Dauphin that Sipe was not intended to have any interest therein. It is pointed out that the testimony of Kearns shows that in the series of loans made in the name of the

Sipes beginning August 20, 1960, and ending with the transaction of February 24, 1961, Dauphin made the application in each instance; that the proceeds with the exception of the final loan were paid to Dauphin in cash; that Kearns did not personally know the Sipes and made no investigation as to their credit; that when the February 24, 1961 loan became delinquent, Kearns phoned Dauphin and asked him to pay the balance in full and that when Dauphin made such payment he was given the cancelled loan papers.

Even though it may be assumed that the evidence warranted the conclusion that literally speaking the indictment check might be classified as one payable to bearer, such assumption is without significance unless under Section 9(3) of the Negotiable Instruments Law, as amended in 1931, a person endorsing bearer paper in the name of another is exempt from criminal liability. The courts have in numerous decisions pointed out the purpose behind this statute. In Houghton Mifflin Co. v. Continental Illinois Nat. Bank & Trust Co. of Chicago, 293 Ill App 423, 12 NE2d 714, the plaintiff sued the bank on 20 checks which it contended were paid by defendant upon forged endorsements. The checks were prepared by plaintiff's bookkeeper, who falsely represented that the payees therein, salesmen of plaintiff, were entitled to be paid the amounts of the checks. The checks were executed by persons authorized to sign the same. The bookkeeper endorsed on each check the name of the payee and then after placing her own name thereon, cashed the checks at defendant's bank, appropriated the proceeds, and then disappeared. In reversing the trial court's judgment for plaintiff, the Appellate Court held that since the checks in question were payable to the order of living persons not intended to have any interest therein, which fact was known to plaintiff's bookkeeper, they were bearer instruments, and therefore plaintiff could

438

not recover. In reaching such decision, the court construed Subdivision 3 of Section 9 of the Negotiable Instruments Law as amended in 1931 to mean that the drawer of an instrument is responsible for the act of his agent who names a fictitious payee without the drawer's knowledge and that such an instrument is to be treated as bearer paper. In its opinion we find the court discussing at considerable length the purpose of the 1931 amendment which added to Subdivision 3 of Section 9 the words, *"or known to his employee or other agent who supplies the name of such payee."* Prior to such amendment the Supreme Court had held in United States Cold Storage Co. v. Central Mfg. Dist. Bank, 343 Ill 503, 175 NE 825, where the facts were the same as those in Houghton Mifflin Co. that the bank was liable on the theory that notice to an agent was not constructive notice to his principal where the agent was engaged in committing a fraudulent act. The Appellate Court then referred to the history of the 1931 amendment which indicated that bankers had urged the legislature to change the law as announced in United States Cold Storage Co. by placing responsibility on the drawer of an instrument for the acts of his agent who supplies the name of a fictitious payee without the drawer's knowledge by treating the instrument as bearer paper. The court concluded that in view of the apparent evil sought to be remedied by the enactment of the amendment that the defendant bank was justified in paying the checks in question upon presentation. Other cases in which a similar result was reached are Madison & Kedzie State Bank v. Madison Square State Bank, 271 Ill App 12; Orton Crane & Shovel Co. v. Federal Reserve Bank, 345 Ill App 284, 102 NE2d 663.

The cases to which we have referred effectively dispose of the question whether under the 1931 amendment the bank or the maker should bear the loss oc-

casioned by the forged endorsement of paper issued to a living person not intended to have any interest therein. However we find no case, nor have any been cited by defendants in which such amendment has been construed to mean as defendants here contend that it provides immunity from criminal liability to a person forging the name of the payee to a bearer check. Agreement with defendants' argument would require extending the scope of the amendment far beyond the subject with which it deals.

 The essential elements of forgery are a false writing or an alteration of an instrument which as written is apparently capable of defrauding and an intent to defraud. People v. Brown, 397 Ill 92, 72 NE 2d 859. Admittedly, the endorsement of Sipe's name on the indictment check was forged. The check was capable of defrauding and it was uttered by Neal V. Dauphin. Where as in this case the forged instrument is uttered, the intent to defraud is presumed. People v. Bailey, 15 Ill2d 18, 153 NE2d 584. People v. Katz, 356 Ill 440, 19 NE 913. People v. D'Andrea, 361 Ill 526, 198 NE 698. In the Katz case the court said:

> "When the forged instrument is uttered the intent to defraud is presumed. (Spears v. People, 220 Ill 72.) Likewise in People v. Meyer, 289 Ill 184, we held that where a forged instrument is uttered, the intent to defraud may be presumed or inferred from proven facts and circumstances surrounding the transaction, and that whether anyone is actually defrauded is immaterial. There was abundant evidence that Katz actually uttered and published the forged check, and under the authorities cited it was for the jury to determine, from all the evidence and proven facts surrounding the transaction, whether an inference of fraudulent intent could be justly drawn."

440

The evidence here shows that Dauphin knew when he cashed the indictment check at the Savanna Bank that it bore the forged endorsement of Sipe. The passing of a forged check is assuredly inconsistent with lack of intent to defraud. We think the evidence in this record was amply sufficient to justify the jury's conclusion that the element of fraudulent intent was proven beyond a reasonable doubt.

██ We turn now to defendants' claim that the trial court erred in instructing the jury. It is contended that its refusal to give defendants instructions 26, 27, 29 and 30, deprived defendants of the right to have the jury instructed as to their theory of the case. Examination of numbers 29 and 30 indicate clearly that they assumed facts not in evidence. As an example, Instruction 29 recited that "if you believe from the evidence that . . . Cecil Kearns knew or had reason to believe said signatures were not the actual signatures of Phillip G. Sipe and Aiko Sipe . . ." We find no evidence in the record that Kearns had any knowledge that the signatures of the Sipes on any of the instruments involved in the Dauphin transactions were false. For such reason alone the trial court was justified in refusing these instructions. Instruction 26 stated in effect that the jury must acquit the defendants if they believed from the evidence that the check was bearer paper. This instruction did not contain a correct statement of the law. As we have previously pointed out the endorsement of bearer paper rendering it capable of defrauding is forgery. Number 27 would have informed the jury that if they believed that Kearns "participated to any extent in the acts which formed the basis of these charges made against the defendants" they could not find the defendants guilty on any charge where the loan company was alleged to be the victim. This instruction was properly refused for the simple reason that it did not tell the

jury that any belief which they might entertain as to the facts in the case must arise from the evidence. Omission from the instruction of the words *from the evidence* was fatal.

■■■■ Defendants complain of the giving of Peoples instructions 9, 10 and 13. As to nine, the record discloses that at the conference on instructions this particular instruction was objected to only on the ground that it was repetitious. In this court it is attacked on other grounds. It is the rule that objections to instructions not called to the trial court's attention may not be urged on review. Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163. The abstract fails to show that at the instruction conference the defendants raised any objection to No. 10 and consequently error with respect thereto is not preserved for review. The apparent criticism of No. 13 was its failure to conform to defendants' theory of the case. It did not however foreclose their right to have the jury instructed as to the defense theory relied upon and the record shows that the jury were so instructed. The people were not required to adopt the defendants' theory of defense. Considered as a whole we think the given instructions fully and accurately informed the jury as to the law applicable to the case.

■■ ■■ There is no merit in defendants' contention that venue was not proven beyond a reasonable doubt. The evidence shows that the indictment check was cashed at the National Bank of Savanna in Carroll County, Illinois. Both defendants resided in Carroll County, as did the person whose name was forged. In forgery cases proof must often be by circumstantial evidence. People v. Church, 366 Ill 149, 7 NE2d 894. In this case we think the circumstances shown by the evidence warranted the inference that it was endorsed by the defendant Ree C. Dauphin in Carroll County.

442

■ The remaining points argued by defendants are that the State's Attorney was guilty of improper conduct and that there was a fatal variance between the allegations of Indictment No. 14723, charging conspiracy and the proof. The claimed misconduct on the part of the prosecutor refers to a question he asked of a witness who had been called to identify the signatures of defendants on certain documents admitted in evidence for the purpose of establishing a standard of comparison. In such question one of these documents was referred to as "a recognizance in probation." Before the question was answered defense counsel objected and moved to withdraw a juror. After a conference with counsel out of the presence of the jury the court denied the motion. The State's Attorney made no further reference to the document. The document itself which is in the record but did not go to the jury shows that it was a recognizance on which the defendants signed as sureties and not as principals. Under the circumstances shown by the record we do not think the prosecutor's questions represented an attempt on his part, as contended by defendants, to give the jury the impression that defendants might have been previously convicted of some other crime. The court did not err in denying the motion.

Defendants argue that there is a variance between the allegations of the conspiracy indictment and the proof because the latter shows Dauphin obtained a check on February 24, 1961, and not cash as charged. Overlooked however is the fact that when the original Sipe loan was made and upon the occasion of each renewal thereof prior to the last transaction the loan company gave Dauphin cash. Proof as to the intent and purpose of the defendants in presenting the forged renewal note on February 24, 1961 did not vary from that shown as to the prior transactions. Such proof

shows a conspiracy to obtain the money of the loan company as charged in the indictment. The procedure by which the actual cash came to Dauphin's hands did not alter the defendants' intention to accomplish the purpose which they had in mind.

Upon a careful review of this record, we are of the opinion that it reflects no prejudicial error and that the defendants received a fair trial. Accordingly the judgment of the circuit court is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.