## JEANETTE FROCKS, INC. v. FIRST PRODUCE STATE BANK.

137 N. W. (2d) 205.

September 3, 1965—No. 39,619.

*Harry L. Altman* and *Herbert L. Grossman,* for appellant.

*Dorsey, Owen, Marquart, Windhorst & West, William A. Whitlock,* and *Robert O. Flotten,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment entered in the district court denying recovery to plaintiff, Jeanette Frocks, Inc., for a sum representing the proceeds of fraudulent payroll checks cashed by plaintiff's dishonest employee at defendant, First Produce State Bank. The essential issue presented by the appeal requires a construction of Minn. St. 335.052(3) (N.I.L. § 9, subd. 3) generally designated as the Banker's Amendment.

From the record, including those facts stipulated, it appears that plaintiff company maintained a checking account with the Northwestern National Bank of Minneapolis. Between 1955 and September 1960 it employed one Bricies Bray as a payroll clerk. Between February 1957 and September 1960 her work involved the computation of earnings of employees from employee's time cards. After computing the earnings, she presented the time cards to the office manager who checked them and returned them to her. She then figured the deductions on the face of the time card, determined each employee's net pay, made out the payroll checks, and delivered them to be signed by the office manager and president of plaintiff company. The checks were then delivered to her to be distributed to the employees. During this 44-month period, Bricies Bray without authority prepared 219 payroll checks payable in most cases to persons who had been or were employees of plaintiff company but were not entitled to pay at that time. Several payees were fictitious. After the fraudulent checks were returned to her, she endorsed each with the name of the respective payee and from time to time cashed the checks at defendant bank. She did not endorse the checks in the presence of the bank employees. The bank paid the amount of the checks to her without requiring her endorsement or identification, although in many cases, the bank employees knew that she was not the named payee. It was common practice of bank employees to cash payroll checks payable to different payees but presented by one person. The bank had cashed genuine payroll checks for her made to different payees. In some cases the bank employees cashed fraudulent checks for her assuming that she was the

payee. The bank had no knowledge of any defect in the checks or in the title of Bray, nor was it given any notice by defendant company that its employee Bray did not have the right to cash any of the checks. After the bank paid the checks, they were presented to the drawee, Northwestern National Bank, and payment of the checks was received.. The loss sustained by the employee's fraudulent acts came to $6,250.66. When the employer discovered the fraud, it notified defendant and the drawee bank and demanded reimbursement, which was refused.

The trial court found that each of the checks cashed by Bray was complete and regular on its face; that defendant bank became the holder of each check before it was overdue; and that it had no notice of any infirmity in the checks or of any defect in the title of Bricies Bray at the time of negotiating them. The court concluded:

"1.   All checks cashed by Bricies Bray with the defendant were bearer paper within the meaning of Minnesota Statutes, Section 335.052.

"2.   No endorsement was required for the negotiation of said checks to the defendant. Said checks were negotiated by delivery.

"3.   The defendant had no duty to require that said checks be endorsed or to inquire into the authority of Bricies Bray to cash said checks.

"4.   The defendant acquired title to said checks and became a holder in due course thereof within the meaning of Minnesota Statutes, Section 335.201.

"5.   The defendant held said checks free of all defenses and was entitled to enforce payment in full of said checks."

■   In considering the application of the so-called Banker's Amendment, Minn. St. 335.052(3), to the facts in this case, it should be observed that prior to the amendment it was held that one cashing a check prepared by an employee of the drawer and made payable to a person whom the employee did not intend to have an interest in the check, although signed by the drawer but without knowledge of the fraudulent character of the paper, was liable for the amount received from the drawee bank on the theory that the check was "order" paper and that the payee's signature was necessary to pass title. New York Cas. Co. v. Sazenski, 240 Minn. 202, 60 N. W. (2d) 368.

The terms "bearer" or "order" paper are used to identify the quality of negotiability of an instrument. Minn. St. 335.15 provides:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the endorsement of the holder completed by delivery."

Defendant bank contends that the checks involved are in fact "bearer" paper which denotes an intention on the part of the drawer to make the instruments transferable by delivery so as to obviate the necessity of negotiation by endorsement.

Were it not for the 1953 amendment we would have to agree with plaintiff that it is entitled to recover. Prior to that amendment losses resulting from the cashing of checks made payable to fictitious payees and cashed by dishonest employees of the drawer were borne by the drawee bank and ultimately by the person who cashed the checks. It was held in New York Cas. Co. v. Sazenski, *supra,* that where an agent or employee abandoned the object of his agency and acted for himself in committing fraud upon his principal, his capacity as agent ceased and his knowledge was not imputed to his principal. In the Sazenski case an agent having authority to settle claims for his employer and issue requisitions for checks to pay such claims fraudulently requisitioned checks payable to fictitious or nonexisting persons and thereafter forged endorsements and cashed them. Quoting Jorgensen Chevrolet Co. v. First Nat. Bank, 217 Minn. 413, 418, 14 N. W. (2d) 618, 621, 153 A. L. R. 588, we said (240 Minn. 206, 60 N. W. [2d] 372):

"* * * where a check is payable to a nonexisting person and the drawer *does not know* that the payee is nonexistent and intends no fraud, the check is not payable to bearer."

The statute in effect at the time that decision was written, Minn. St. 1949, § 335.052, so far as applicable here, provided:

"The instrument is payable to bearer:

\* \* \* \* \*

"(3) When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable."

By the 1953 amendment, clause (3) was significantly changed so that the section reads as follows:

"The instrument is payable to bearer:

\* \* \* \* \*

"(3) When it is payable to the order of a fictitious or non-existing person *or living person not intended to have any interest in it,* and such fact was known to the person making it so payable, *or known to his employee or other agent who supplies the name of such payee.*" (Italics supplied.)

We agree with the construction placed upon the amendment by the trial court in a helpful memorandum accompanying his findings of fact. He said:

"By the unambiguous language of the Amendment, no other interpretation can be made other than that the Legislature intended to impute the knowledge of the employee who supplied the name of the payee to such employee's principal. Therefore under the admitted facts of the case at bar, the checks in question were bearer paper under the definition in Minn. Stat. 335.052(3) as amended."

The so-called Banker's Amendment is designed to protect the banks in typical "padded payroll" situations and other cases where a dishonest employee furnishes the drawer's signing officer with the name of a payee who is to have no interest in the check. It seems to us that the essential fairness of the amendment may be found in the maxim that where one of two innocent persons must suffer by acts of a third, he who by his conduct, act, or omission has enabled such person to occasion the loss must sustain it.[1]

The purpose of the rule is well expressed in Houghton Mifflin Co. v. Continental Ill. Nat. Bank & Trust Co. 293 Ill. App. 423, 427, 12 N. E. (2d) 714, 716, where the court said:

"\* \* \* Bankers urged the law thus announced was unjust and there appears in the record a portion of a pamphlet entitled, 'Program of State Legislation Recommended by American Bankers Association, corrected

---

[1] Nehring v. Bast, 258 Minn. 193, 103 N. W. (2d) 368, 85 A. L. R. (2d) 1400.

to Jan. 1, 1932,' indicating their attitude. The statement is by Mr. Paton, counsel for the Association. After giving the exact section 9 as amended by the Illinois Legislature in July, 1931, he says:

" 'This amendment drafted in the office of the general counsel and approved by the Association, enlarges the definition of bearer paper by including instruments payable to fictitious persons, *where the employee or other agent has knowledge of the fiction.* Under the existing definition the drawer of a check having no knowledge of the fiction cannot be held responsible for the act of his agent who supplies the name of the fictitious payee. The person mistakenly signing such check believes it is payable to a real person and expects it to be transferred by genuine endorsement. In point of fact, transfer by genuine endorsement is impossible and this places an unfair burden upon the paying bank or a *bona fide* holder.

" 'The purpose of the amendment is to place the responsibility upon the drawer of an instrument for the acts of his agent who names a fictitious payee without the drawer's knowledge. This is accomplished by treating such instrument as bearer paper transferable by delivery.' "

The amendment places responsibility upon the drawer for losses resulting from the dishonest acts of the drawer's agents. Since such checks are "bearer" paper, title passes by delivery and endorsement is not necessary for negotiation. Minn. St. 335.15.

From the authorities which have arisen following the enactment of the so-called Banker's Amendment, it appears that the drawer cannot recover from the drawee bank the amount debited to the drawer's account and paid by the bank on a fictitious payee check. Harlan E. Moore & Co. v. Champaign Nat. Bank, 13 Ill. App. (2d) 232, 141 N. E. (2d) 97; Fidelity & Cas. Co. v. United States Fidelity & Guaranty Co. (La. App.) 81 So. (2d) 576; Prugh, Combest & Land v. Linwood State Bank (Mo. App.) 241 S. W. (2d) 83; Southall v. Columbia Nat. Bank (Mo. App.) 244 S. W. (2d) 577; Swift & Co. v. Bankers Trust Co. 280 N. Y. 135, 19 N. E. (2d) 992 (application of Illinois law); Houghton Mifflin Co. v. Continental Ill. Nat. Bank & Trust Co. *supra;* Orton Crane & Shovel Co. v. Federal Reserve Bank, 345 Ill. App. 284, 102 N. E. (2d) 663; Citizens Loan & Security Co. v. Trust Co. of Ga. 79 Ga. App. 184, 53 S. E. (2d) 179; Ellis Weaving Mills v. Citizens & Southern Nat. Bank (W.

D. S. C.) 91 F. Supp. 943, affirmed (4 Cir.) 184 F. (2d) 43. The theory of these cases is that, since the check was a bearer instrument, the bank did not breach its contract with the depositor to pay according to his order because it paid the bearer of the check. Nor has the drawer been successful in recovering the loss from the bank or other person cashing the fictitious payee checks. Prugh, Combest & Land v. Linwood State Bank, *supra;* Dorsey v. Houston Nat. Bank (Tex. Civ. App.) 338 S. W. (2d) 540; Hillman v. Kropp Forge Co. 340 Ill. App. 606, 92 N. E. (2d) 537; Hartford Acc. & Ind. Co. v. Fifth-Third U. T. Co. (6 Cir.) 111 F. (2d) 762. See, Travelers Ind. Co. v. Szymanski, 207 Misc. 130, 136 N. Y. S. (2d) 790.[2]

■ It is next urged that even if it is assumed that the checks are "bearer" paper, the bank may not be protected because it is not a holder in due course. A holder in due course is defined by Minn. St. 335.201, which provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

---

[2] California, although having a similar statute to § 335.052 (the Banker's Amendment), has followed pre-1953 Minnesota law typified in New York Cas. Co. v. Sazenski, 240 Minn. 202, 60 N. W. (2d) 368. See Acme Paper Co. v. Goffstein, 125 Cal. App. (2d) 175, 270 P. (2d) 505, and Calif. Mill Supply Corp. v. Bank of Am. Nat. Trust & Sav. Assn. 36 Cal. (2d) 334, 223 P. (2d) 849, both cases similar factually to the instant case. Subsequent to those cases, both of which were decided prior to 1954, the California legislature repealed Civil Code of California, § 3090. See, Calif. Stats. 1963, c. 819, § 2, effective January 1, 1965. This provision is now included in the newly adopted Uniform Commercial Code of California, §§ 3111, 3204, 3405. Sections (1) (b) and (1) (c) of § 3405 are similar in effect to Civil Code, § 3090(3). The California Annotation to the proposed Uniform Commercial Code states:

" * * * The comments suggest that this section is an extension of C. C. [Civil Code] § 3090(3) to cover padded pay roll cases, i.e., loss falls on the employer rather than the holder or drawee since presumably by careful selection of employees or fidelity insurance he can protect himself."

It should be noted that no California cases have been reported which either reverse those cited above or support the California Commission comments on the Uniform Commercial Code, § 3405. See, also, Calif. Civil Code Annotated, § 3090.

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It is contended by plaintiff that the bank cannot be a holder in due course within the meaning of the foregoing statute because the paper was not taken in good faith without notice of the infirmity of the instruments and the defect of the person negotiating them. It contends that the bank knew that Bricies Bray was not entitled to the proceeds or that the bank was under a duty to make inquiry as to her authority, and having failed to do so, cannot be said to be a holder in due course and consequently its rights must be subject to those of the employer as against the employee. It argues that the fact that the employee cashed 146 different checks under different names at different times should have put the bank on notice and compelled it to inquire and investigate as to the circumstances under which the employee presented the checks. In considering this point we again refer to the trial court's memorandum in which he emphasized that on the basis of the record—

"* * * it was not uncommon for defendant's tellers to cash payroll checks payable to different payees but presented by one person and in fact had cashed genuine payroll checks for Bricies Bray although each check was payable to a different payee. * * * When so cashing each of the checks, defendant did not have knowledge of any defect in the check or in the title of Bricies Bray; nor was defendant given any notice by plaintiff or any of the named payees that Bricies Bray either had or did not have the right to cash any of the checks."

The trial court was satisfied on the basis of the stipulated facts and entire record that the bank cashed the checks "without knowledge of any infirmity or defect in them or in the title of Mrs. Bray who negotiated them. It is well settled that there must be actual knowledge of an infirmity or defect to deprive one of his status as a holder in due course."

Our authorities support the views of the trial court. We said in Western Surety Co. v. Friederichs, 241 Minn. 492, 63 N. W. (2d) 565, that under the statute defining a holder in due course mere negligence is not sufficient to prove bad faith, but if the purchaser had knowledge of facts which should put him on inquiry, taking negotiable instruments without investigation amounts to bad faith under §§ 335.201, 335.211.

In Olsen v. Hoffmann, 175 Minn. 287, 291, 221 N. W. 10, 11, we said:

"* * * We cannot adopt the rule that the purchaser of commercial paper must in all cases make investigation as to the maker. The law is that he must investigate only under exceptional circumstances. * * * When there are facts or circumstances which constitute 'red lights' ahead, the purchaser must then not proceed blindly but must make inquiry to ascertain the truth."

In the authorities relied upon by plaintiff, Husseyni v. Rappaport (D. Minn.) 127 F. Supp. 144; State of the Netherlands v. Federal Reserve Bank (S. D. N. Y.) 99 F. Supp. 655; and United States v. Michaelson (D. Minn.) 58 F. Supp. 796, the results reached were on the basis of records which established "exceptional circumstances" and the presence of actual knowledge or "danger signals" which imposed a duty upon the bank to inquire. We agree with the trial court that circumstances which warranted a contrary result in those cases are not found in the record before us. In this case we have an employee of the drawer company appearing at the bank over a period of more than 3 years, cashing checks in the course of her employment. The bank and its employees could well assume that she was present there in the conduct of her customary duties for her employer. The conduct of the bank under the circumstances is to be determined by the simple test of honesty and good faith and not by speculative claims of negligence or want of diligence. As was said in Credit Alliance Corp. v. Buffalo Linen Supply Co. Inc. 238 App. Div. 18, 19, 263 N. Y. S. 39, 41, quoting Cheever v. Pittsburgh, S. & L. E. R. Co. 150 N. Y. 59, 65, 44 N. E. 701, 703, 34 L. R. A. 69, 55 A. S. R. 646:

"* * * The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by cir-

cumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail."

Mere negligence or want of diligence in failing to make inquiry is not sufficient to constitute want of good faith for purposes of qualifying as a holder in due course. The purchaser's duty to inquire as to the authority of the bearer to negotiate negotiable paper is not absolute and arises only where there is actual knowledge of a defect or actual suspicion that inquiry would disclose a defect. Under the facts in this case we must agree with the trial court that the failure of the bank to make inquiry does not constitute want of good faith necessary to be a holder in due course. The record supports the finding of the trial court that the bank did not know or suspect that its transactions with plaintiff's dishonest employee were anything other than usual and normal banking transactions and that it took the checks in good faith.

Affirmed.